IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA THOMPSON, | No. 2:24-CV-0793-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

      Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 5 and 6, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the Court are the parties' briefs on the merits, ECF Nos. 12, 18 and 22.

      The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

1

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1   Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2   If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3   If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

|   |   |   |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on July 6, 2021.  See CAR 17.[1]  In the application, Plaintiff claims disability began on January 1, 2019.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on March 31, 2023, before Administrative Law Judge (ALJ) Daniel Myers.  In an April 12, 2023, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): lupus, migraines, an antiphospholipid blood clotting disorder, and obesity;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work except she can perform only occasional crawling and climbing of ladders; no constant stooping, kneeling, crouching, and climbing of stairs; and only frequent, not constant, handling and fingering; the claimant can have no more than occasional exposure to heat and hazards, such as unprotected heights and dangerous moving machinery; she can have no exposure to direct sun;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is capable of performing her past relevant work as a waitress, parts salesperson, and complaint clerk; additionally, there are other jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 19-28.

After the Appeals Council declined review on January 10, 2024, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]  Citations are to the Certified Administrative Record (CAR) lodged on May 9, 2024, ECF No. 8.

4

### III. DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ erred at Step 2 in failing to consider fibromyalgia or mental impairments to be severe; (2) the ALJ's residual functional capacity finding at Step 4 "is self-evidently wrong and has no basis;" and (3) the ALJ erred in evaluating Plaintiff's subjective statements and testimony at Step 4.

#### A.   **Step 2**

To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

At Step 2, the ALJ found that lupus, migraines, an antiphospholipid blood clotting disorder, and obesity are severe impairments which "significantly limit the ability to perform basic work activities." CAR 19. As to impairments found to be non-severe at Step 2, such as a hiatal hernia, asthma, and mental impairments, the ALJ nonetheless considered such impairments at Step 4 in determining Plaintiff's residual functional capacity. See id. at 20; see also id. at 24-25 (residual functional capacity analysis). Plaintiff argues the ALJ erred at Step 2 with respect to fibromyalgia and mental impairments. See ECF No. 12, pgs. 6-9.

///

    1.   <u>Fibromyalgia</u>

Regarding fibromyalgia, the ALJ stated as follows:

> Although the medical evidence of record shows that the claimant has been assessed with fibromyalgia (*see e.g.* 8F/26), I find that fibromyalgia is not a medically determinable impairment pursuant to Agency regulations. Under Social Security Ruling 12-2p, there has to be, in part, evidence showing that other disorders that could cause the claimant's symptoms or signs were excluded, or that there is evidence that other disorders that could cause the claimant's repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. The medical evidence of record does not document such findings. Consequently, the claimant does not have a medically determinable impairment for fibromyalgia under Agency regulations.

CAR 23-24.

Plaintiff argues that the ALJ erred by not finding fibromyalgia to be a severe impairment. See ECF No. 12, pgs. 6-7. According to Plaintiff:

> That Marina Thompson's fibromyalgia should have been found severe was adequately argued above. The decision gives no indication it saw Dr. Vij's quoted statement at CAR 1008 saying why Ms. Thompson had FMS (*supra,* p.2), and even if one imputed to the decision, on no basis, that it dismissed the statement as mere rote recitation, step-two law, following *Webb* and *Tonapetyan,* requires either further development clarifying why Ms. Thompson's doctors give her this diagnosis in this fashion seemingly satisfying Social Security Ruling 12–2p or simply precautious inclusion of it at step two. (See fn.3.) The decision gives nothing but a rote recitation that the required findings aren't in the record (CAR 23–24), which is incorrect. Again, there is no reason to believe the decision knew what we know from CAR 1008, including that Dr. Vij diagnosed FMS with full knowledge autoimmune complexities were present.

ECF No. 12, pg. 7.

At the outset, the Court rejects the suggestion that the ALJ failed to consider all of the evidence of record, specifically page 1008. This document, which consists of a progress note by Dr. Priya Vij dated May 25, 2022, is part of Exhibit 8F, which the ALJ clearly references in the decision. See CAR 1001; see also CAR 23 (hearing decision citing Exhibit 8F). Plaintiff has presented no evidence to suggest that the ALJ did not consider Exhibit 8F in its entirety, including page 1008.

/ / /

/ / /

6

Turning to the ALJ's analysis regarding fibromyalgia at Step 2, Social Security Ruling (SSR) 12-2p provides guidance. Under the ruling, fibromyalgia is shown to be a medically determinable impairment either by evidence of eleven tender points on examination or evidence of repeated manifestation of six or more specific symptoms. See SSR 12-2p. Also required is evidence demonstrating that other disorders that could cause the observed symptoms have been ruled out. See id.

Plaintiff argues that "decision gives nothing but a rote recitation that the required findings aren't in the record (CAR 23–24), which is incorrect." Contrary to Plaintiff's conclusion, the findings required under Social Security Ruling 12-2p are not reflected in Dr. Vij's progress note at page 1008. Dr. Vij's statement regarding fibromyalgia, upon which Plaintiff relies, is as follows:

> Marina Jean Thompson meets the American College of Rheumatology diagnostic criteria of fibromyalgia, which includes: Widespread pain (typically in at least 7 of 19 body areas) and a severity of symptoms that include fatigue, waking unrefreshed, cognitive symptoms, and other somatic symptoms; Symptoms present for more than 3 months and lack of another disorder that would explain the symptoms. . . .

CAR 1008.

As Defendant notes, Dr. Vij's statement is conclusory. In essence, Dr. Vij merely repeats the American College of Rheumatology criteria for diagnosing fibromyalgia without identifying any objective evidence to support the diagnosis, as required under SSR 12-2p. Plaintiff does not point to such objective evidence in her brief. Given the conclusory nature of Dr. Vij's assessment, the Court finds that SSR 12-2p has not met and that the ALJ did not err at Step 2 in determining that the evidence fails to establish fibromyalgia as a medically determinable impairment in this case. See Walters v. Kijakazi, 2022 WL 1046208, at *1 (9th Cir. Apr. 7, 2022) (concluding that the claimant "did not provide objective medical evidence of his symptoms or their severity" and a physician's diagnosis of fibromyalgia alone cannot establish a medically determinable impairment); see also Ford v. Saul, 950 F.3d 1141, 1155 at n.7 (9th Cir. 2020) (affirming the ALJ's finding that a diagnosis of fibromyalgia was insufficient where the physician failed to document the bases for such diagnoses, such as identifying the requisite tender points or

ruling out other causes).

### 2. Mental Impairments

The ALJ provided a detailed analysis of Plaintiff's mental impairments at Step 2, ultimately concluded that they are not severe, singly or in combination. See CAR 19-22. Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure (known as the "paragraph B" criteria). See 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The ALJ is required to record pertinent findings and rate the degree of functional loss. See 20 C.F.R. §§ 404.1520a(b), 416.920a(b). The ALJ did so here. As to mental impairments, the ALJ stated:

> The claimant's medically determinable mental impairments, including an anxiety and an adjustment disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. In making this finding, I have considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering or applying information. The claimant alleges that her memory is foggy due to lupus, but the medical evidence of record shows that the claimant has a relatively normal memory with digit span responses in the average range (7F). Thus, in this area, the claimant has no limitation.
>
> The next functional area is interacting with others. The claimant has revealed that she interacts with others in person and on the phone as well as goes shopping on a regular basis (11E). Thus, in this area, the claimant has no limitation.
>
> The third functional area is concentrating, persisting or maintaining pace. The claimant has been shown to be able to spell the word "world" forward and backward (7F) and has demonstrated the ability to perform a significant number of activities of daily living, including preparing meals and doing household chores (11E). In this area, the claimant has no more than a mild limitation.
>
> The fourth functional area is adapting or managing oneself. The claimant has demonstrated the ability to take care of her personal hygiene and perform a significant number of activities of daily living (11E, 7F). Thus, in this area, the claimant has no more than a mild limitation.

\* \* \*

/ / /

>Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)).

CAR 19-22.

In reaching these conclusions, the ALJ relied on Plaintiff's own function reports as well as the objective findings of Drs. Stephen Simonian, M. Jakubowski, Joshua Schwartz, and Preston Davis. See id.

Under the regulations governing evaluation of mental impairments, where the degree of functional limitation is no more than mild the impairments are considered non-severe. See 20 C.F.R. § 404.1520a. Plaintiff argues that the ALJ erred in evaluating the doctors' records under the paragraph B criteria at Step 2. According to Plaintiff, such evaluation is only part of the analysis at Step 4.[2] Plaintiff cites Judge Newman's decision in Few v. Commissioner of Social Security, 2:19-cv-1491-KJN, in support of this proposition. In Few, Judge Newman concluded that "the existence of contradictions between the opinions. . . .is not a proper basis for rejecting a mental impairment at step two." Judge Newman went on to say that such analysis "is meant to occur at step four. . . in assessing RFC [residual functional capacity]." The Few case, however, is distinguishable in that, here, the ALJ did not comment on contradictory medical opinions. Rather, the ALJ in this case cited the doctors' objective findings in support of conclusions under the paragraph B criteria. The ALJ did not engage in any improper "persuasiveness analysis" at Step 2, as Plaintiff contends.

**B.     Step 4**

Residual functional capacity, evaluated at Step 4 of the sequential evaluation process, is the most a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her

---

[2]     Despite Plaintiff's claim of error, Plaintiff concedes that the regulations do not explicitly limit the paragraph B analysis to Step 4. See ECF No. 12, pg. 8.

9

limitations. An ALJ's RFC finding must include all of the limitations the ALJ has found to be supported by the evidence of record. See SSR 85-15.

Plaintiff first argues the ALJ erred at Step 4 by failing to consider the limiting effects of migraine headaches, despite finding this impairment to be severe at Step 2. See ECF No. 12, pgs. 9-12. Plaintiff also argues the ALJ erred at Step 4 with respect to analysis of her subjective testimony and statements. See id. at 12-15.

1. Migraine Headaches

As Plaintiff notes, the ALJ determined at Step 2 that Plaintiff's migraine headaches are a severe impairment. See CAR 19-20. The ALJ found that Plaintiff's severe impairments – including migraine headaches – "significantly limit the ability to perform basic work activities. . . ." Id. at 19. At Step 4, the ALJ acknowledged Plaintiff's testimony and statements that she is unable to work due to her impairments, which include migraine headaches. See id. at 24. The ALJ then commented on Plaintiff's migraine headaches as follows: "The medical evidence of record shows that the claimant has a history of . . .migraine headaches." Id. at 25. The ALJ also noted that Plaintiff had complained of migraine headaches at a July 2021 rheumatological consultative evaluation performed by David Chesak, M.D. See id. The hearing decisions contains no further mention of Plaintiff's migraine headaches.

Plaintiff argues:

> Ergo, the decision failed to account for the migraine headaches it found severe. Ergo, its RFC is self-evidently wrong.
> One expects migraines to have an *episodic* negative effect on ability to work. See generally Social Security Ruling 19–4p [Primary headache disorders]. Nothing in this record supports finding some *general*, overall, sustained decrement in work-functioning attributable to migraines; everything says their effect is episodic. But nothing in the decision's RFC is episodic. The RFC is self-evidently wrong.

ECF No. 12, pgs. 10 (emphasis in original).

Defendant argues that the ALJ did not err because the ALJ properly found that the "alleged severity was not entirely consistent with the medical and nonmedical record such as her daily activities." ECF No 18, pg. 11. The Court does not agree that this finding adequately addresses Plaintiff's residual functional capacity as it relates to migraine headaches. As noted

above, at Step 2 the ALJ determined that Plaintiff's impairments, including migraine headaches, "significantly limit" Plaintiff's ability to perform basic work activities. An impairment is severe at Step 2 if it has more than a minimal impact on a claimant's ability to work. See SSR 85-28; Yuckert, 841 F.2d at 306. In finding that Plaintiff's migraine headaches, in combination with her other impairments, "significantly limit" Plaintiff's ability to perform work activities, the ALJ went far beyond this standard. At Step 4, however, the ALJ does not appear to have considered how Plaintiff is significantly limited by her migraines, despite the finding at Step 2. While the ALJ determined that Plaintiff's subjective statements and testimony regarding the limiting effects of her migraine headaches were not entirely consistent with the objective evidence, the ALJ does not discuss any objective evidence relating to migraine headaches. Nor does the ALJ outline at Step 2 the objective evidence supporting the determination that Plaintiff's migraine headaches "significantly limit" her ability to work. To the extent the ALJ found that the objective evidence supported a finding at Step 2 that migraine headaches "significantly limit" her ability to work, the ALJ erred at Step 4 by not considering such evidence in the context of Plaintiff's residual functional capacity.

Defendant has not offered any explanation for the ALJ's failure to address the objective evidence indicating the significant limitations caused by Plaintiff's migraine headache impairment, which was found to be severe at Step 2. The Court will direct that this matter be remanded to the Commissioner for further consideration of the limiting effects of Plaintiff's migraine headaches.

        2.        Plaintiff's Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id.

11

Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

///

Regarding reliance on a claimant's daily activities to discount testimony of disabling pain, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to Plaintiff's statements and testimony, the ALJ provided the following summary:

> The claimant alleges, in essence, that she is unable to work due to lupus, multiple sclerosis, arthritis, mixed connective tissue disease, migraine headaches, and an antiphospholipid clotting disorder. She also claims that she often needs frequent or extended rest breaks throughout the day and that she occasionally uses a cane to ambulate (4E, 5E, 6E, 11E).
>
> On Function Reports (4E, 5E, 6E, 11E, 12E), the claimant, her husband, and her mother-in-law revealed that the claimant was able to prepare meals, do laundry, wash dishes, sweep, mop, drive a car, shop in stores and by computer, and take her kids to school. They also revealed that she had limitations with exertional, postural and manipulative activities; that she used a cane, brace and splint; and that she had difficulty with concentrating and completing tasks.

///

> During the hearing, the claimant testified that she had difficulty lifting her baby and cookware; that she could do small loads of laundry and light housework; and that she had migraines 3 to 4 times a month and would make her be out for a day or two about 2 to 3 times a month. She also testified that she had difficulty with her hands for a couple of days to a week during a month; that she had difficulty sitting due to back pain; that she could be on her feet for 30 to 45 minutes before needing a break; that she had difficulty with ambulation due to her legs feeling like they will give out; that she occasionally uses a cane that was not prescribed, but was suggested by her doctor to use; that she had extreme fatigue and muscle soreness due to fibromyalgia; and that she was not currently receiving any mental treatment.

CAR 24-25.

After summarizing the objective medical evidence, the ALJ concluded as follows regarding Plaintiff's statements and testimony:

> Thus, after careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's, her husband's, and her mother's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As for their statements about the intensity, persistence, and limiting effects of the claimant's symptoms, they are inconsistent with the medical evidence of record as a whole. To illustrate, although they allege that the claimant had difficulty with ambulation and sitting in addition to occasionally using a cane, the claimant had been reported to have normal strength with a normal gait and intact sensation. The claimant also acknowledged during her hearing [that use of a cane] had been suggested by a physician but was not prescribed. In addition, despite her symptoms and impairments, the claimant has demonstrated the ability to perform a significant number of activities of daily living, including preparing meals, doing household chores, going shopping, and taking her kids to school.

CAR 26.

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's statements and testimony separately from the function reports submitted by her husband and mother-in-law. See ECF No. 12, pgs. 12-15.  This argument appears to have three components.  First, Plaintiff contends that the ALJ erred with respect to the third-party statements because the ALJ did not provide reasons germane to each witness.  Second, Plaintiff asserts that the ALJ's references to the objective evidence are insufficient to provide a rationale for discrediting her subjective statements and testimony.  Third, Plaintiff challenges the ALJ's reliance on her limited daily activities to discount her statements and testimony.

14

Plaintiff's first argument is based on case law relating to evaluation of third-party statements which is no longer applicable due to revision of the regulations for cases filed, as here, after March 2017. Under the revised regulations applicable to this case, the ALJ need only consider third-party statements, but is not required to explain how they were considered. See 20 C.F.R. § 416.920c(d). Because the hearing decision clearly reflects that third-party statements were considered, the Court rejects Plaintiff's first argument.

As to Plaintiff's second argument – that the ALJ's references to the objective medical evidence do not provide a sufficient analysis – the Court does not agree. As explained above, the ALJ may not rely solely on inconsistency with the objective evidence. The ALJ did not do so here. The hearing decision reflects that, in addition to inconsistency with the objective evidence, the ALJ also relied on inconsistencies between various statements made by Plaintiff regarding her subjective complaints, as well as her activities of daily living. As to inconsistencies, the ALJ notes, for example, that while Plaintiff testified to debilitating symptoms relating to her ability to ambulate and the need to use a cane, Plaintiff admitted during the hearing that use of a cane has never been prescribed by a doctor. The ALJ may rely on this inconsistency. See Smolen, 80 F.3d at 1284.

Finally, as to Plaintiff's argument that the ALJ's reliance on her activities of daily living was inappropriate because such activities are limited and do not show an ability to perform work on a full-time consistent basis, the Court also does not agree. Again, even if Plaintiff's activities of daily living are limited and do not show transferability to a work-setting, the ALJ may nonetheless rely on inconsistencies between Plaintiff's subjective statements and testimony concerning the limiting effects of her impairments and her daily activities. See id. Here, Plaintiff testified that she is completely disabled by her symptoms. However, Plaintiff also acknowledged daily activities – such as preparing meals, completing household chores, grocery shopping, and caring for her children – which are inconsistent with her allegation of total disability.

/ / /

/ / /

/ / /

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF Nos. 12 and 22, is granted;
2. Defendant's motion for summary judgment, ECF No. 18, is denied;
3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  March 19, 2025

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE